IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:26-cr-049 |
| | ) | |
| v. | ) | **INFORMATION** |
| | ) | |
| JUSTIN AARON TENNEY, | ) | T. 18 U.S.C. § 1343 |
| | ) | T. 18 U.S.C. § 1349 |
| Defendant. | ) | |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES:**

Introduction

At all times relevant to this Information:

1.     JUSTIN AARON TENNEY, was the owner of Cashout Kings, LLC (hereinafter "Cashout Kings"), a business in Davenport, Southern District of Iowa.

2.     Boss Tax and Accounting Services was a business in Davenport, Southern District of Iowa.

3.     Biz2Credit, Inc. (hereinafter "Biz2Credit"), was a Delaware corporation with its principal place of business in New York. Itria Ventures LLC (hereinafter "Itria") is a Delaware limited liability company with its principal place of business in New York. Itria is a wholly owned subsidiary of Biz2Credit. Itria was a non-bank lender authorized by the Small Business Administration to originate Paycheck Protection Program loans. Itria used Internet computer servers outside the State of Iowa. Itria approved PPP loan proceeds that were disbursed from its banks in California or New York.

1

## THE PAYCHECK PROTECTION PROGRAM

4.    The United States Small Business Administration (SBA) is an Executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

5.    As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

6.    The 2020 CARES Act established the Paycheck Protection Program (PPP), which was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party and non-bank lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7.    The PPP application process requires applicants to submit a Borrower Application Form (SBA Form 2483) through an SBA-approved financial entity signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program

2

rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications were used to calculate the amount of money the small business was allowed to receive under the PPP. In support of the submitted "average monthly payroll" figure, the loan application recommended documentation that may include: payroll tax filings reported to the IRS such as Form 940, 941, 943 or 944 tax returns or payroll summary records; Form 1099-Misc; or certain published PPP Reports; or Annual Income and Expense statements (for sole proprietorships only); or business tax returns (Form 1040 Schedule C, Form 1040 Schedule F, Form 1120S, Form 1120, or Form 1065). SBA lenders and approved entities also commonly required additional supporting documentation to include business bank statements, personal financial statements, and other financial documentation.

8.     PPP loan applications were electronically submitted or caused to be electronically submitted by the borrower to the lender. These applications were then submitted to the SBA, which assigned each application a reference number, called an "e-tran" number. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a designated financial account of the applicant business.

9.     Under the acknowledged program rules, the proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the

continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, to pay the borrower's personal federal income taxes or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses. Any outside agents who assist borrowers with loan applications cannot be paid out of loan proceeds, the lender will pay the agent, and agents may not collect fees from the applicant.

10. The submitted application required the borrower to make the following certifications:

a. "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## Count 1
### (Conspiracy to Commit Wire Fraud)

11.    Paragraphs 1-10 of this Information are re-alleged and incorporated herein.

12.    Beginning on or about January 21, 2021, and continuing until August 15, 2022, in the Southern District of Iowa and elsewhere, the defendant, JUSTIN TENNEY, did knowingly conspire and agree with others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in executing this scheme, causing writings, signs, signals, and sounds to be transmitted by means of wire in interstate commerce, in violation of Title 18, United States Code, Section 1343.

### MANNER AND MEANS

13.    TENNEY and co-conspirators devised a scheme to obtain money by submission of PPP Loan Applications that contained false representations to approved SBA lenders. These representations would include false average monthly payroll amounts and number of employees. TENNEY would affirm, under penalty of prosecution and perjury, that his purported business was eligible for this loan and that the information in the PPP loan application was true and correct. The loan application was wire transmitted to the lender via an Internet portal.

14. In support of the false representations in the PPP loan applications, a known co-conspirator would wire transmit false and fraudulent federal IRS Form 940 and Form 941 payroll forms, IRS Form 1040 tax returns, and bank statements.

15. These false representations and documentation were material and influenced SBA and the approved lender to authorize a PPP loan.

16. After the loan was approved, TENNEY electronically signed and submitted by wire a Loan Agreement and directed the approved lender to wire deposit the loan proceeds in a bank account to which he had access and control.

17. The approved lender wire transmitted loan proceeds into the bank account controlled by TENNEY.

18. Subsequently, TENNEY and co-conspirators would wire transmit applications for forgiveness of the PPP loan.

## ACTS IN FURTHERANCE OF CONSPIRACY

19. TENNEY and a co-conspirator engaged in cellular phone calls and agreed to participate in the scheme to fraudulently obtain PPP loan funds. At least one of these calls was conducted between TENNEY, in Illinois, and the co-conspirator, in the Southern District of Iowa.

20. On or about January 29, 2021, TENNEY and a co-conspirator obtained a PPP Loan Application (SB 2834) form through an Internet portal created by Itria. This portal was accessed from an Internet Protocol (IP) address in the Southern District of Iowa.

21.    In this loan application, TENNEY and a co-conspirator falsely represented that Cashout Kings had an average monthly payroll of $123,583 and (13) thirteen employees.

22.    TENNEY electronically signed this PPP Loan Application and caused it to be wire transmitted to the Itria Internet portal.

23.    This PPP Loan Application was then transmitted by wire to the SBA. The SBA authorized this application and transmitted it by wire back to the Itria portal. Based on the information contained in the PPP Loan Application, specifically the average monthly payroll and number of employees, a PPP loan in the amount of $270,833 was approved.

24.    Itria created a set of Loan Documents and emailed these documents to CashoutkingsQC@gmail.com, an email account controlled by TENNEY.

25.    On February 25, 2021, TENNEY received and signed these loan documents via DocuSign. In these documents, TENNEY directed loan proceeds to be disbursed to a Wells Fargo bank account, ending in 6279, and controlled by TENNEY. These loan documents were transmitted by wire back to the Itria portal.

26.    On March 3, 2021, loan proceeds in the amount of $270,833 were electronically transmitted from an Itria bank in California or New York, to the Wells Fargo bank account ending in 6279.

27.    On March 3, 2021, $10,000 was wire transferred from TENNEY's Wells Fargo account ending in 6279 to a bank account for Boss Tax and Accounting Services.

28.    On March 4, 2021, $10,000 was wire transferred from TENNEY's Wells Fargo account ending in 6279 to a bank account for Boss Tax and Accounting Services.

29.    On March 5, 2021, $5,000 was wire transferred from TENNEY's Wells Fargo account ending in 6279 to a bank account for Boss Tax and Accounting Services.

30.    On August 15, 2022, TENNEY electronically signed via DocuSign a PPP Loan Forgiveness Application. Tenney then submitted this forgiveness application by wire to the Itria Internet portal.

This is a violation of Title 18, United States Code, Section 1349.

David C. Waterman
United States Attorney

By: _____

Richard D. Westphal
Assistant United States Attorney